## Case No. 14,973.

### UNITED STATES v. DODGE.

[1 Deady, 124.] [1]

District Court, D. Oregon. July 15, 1865. [2]

CUSTOMS DUTIES—LIABILITY OF CONSIGNEE—WHEN DUTIES ACCRUE—BONDED WAREHOUSES.

1. The importer or consignee of imported goods, is personally liable for the duties charged thereon.

2. An importation is complete when the goods arrive at the proper port of entry, and the duties accrue at that time, and not at the time of the subsequent entry at the custom house.

3. In 1864 there were no public stores or bonded warehouses in the district of Oregon, and therefore goods imported into such district, before June 30 of that year, could not come within the description or operation of section 19 of the act of that date (13 Stat. 216).

This action was commenced June 23, 1865, to recover a balance of $738.68, alleged to be due from the defendant [Alexander Dodge] to the plaintiff, for duties on a cargo of salt imported from the Sandwich Islands to Portland, in the district of Oregon, in the month of June, 1864. The case was tried by the court without the intervention of a jury. From the findings it appears: That on June 12, 1864, the bark Cambridge arrived at the port of Astoria, in this district, from the Sandwich Islands, with a cargo of 401,364 pounds of salt in bulk, consigned to order; that prior to June 30, the defendant purchased said salt, and became the owner and consignee thereof, and as such made a verbal entry of the same for consumption, which entry was to be made in writing, as soon as the salt was discharged from the vessel, and the exact quantity ascertained; that in pursuance of said purchase and verbal entry, and prior to June 30. said salt was, by permission of the proper officer, discharged from said vessel, and received by the defendant in his premises; and that, afterwards, on July 23, the entry of the salt was made and verified in writing by the defendant, and the duties thereon computed at the rate of twenty-seven cents a hundred pounds, amounting in the aggregate, to $1,083.68, of which sum the defendant shortly afterwards paid to the collector, $300, but thereafter refused to pay the remainder of $783.68.

Joseph N. Dolph, for plaintiff.

Lansing Stout and Charles Larabee, for defendant.

DEADY, District Judge. There is no doubt but that the defendant is personally liable for whatever duties are legally due upon the salt. When he purchased a cargo consigned to order, he became the consignee thereof. In Meredeth v. U. S., 13 Pet. [38 U. S.] 493,

1 [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]
2 [Affirmed by the circuit court. Case unreported.]

the supreme court held that both the importer and consignee were personally liable for duties on imported goods. Upon the argument no serious question was made as to the facts of this case, but admitting them to be as found by the court, the defendant makes two objections to the plaintiff's right to recover more than the sum of $422.45, which he admits to be due.

First: That under the act of June 30, 1864 (13 Stat. 213), salt was only liable to pay a duty of eighteen cents a hundred pounds, and that this cargo came within that act by virtue of section 19 thereof (13 Stat. 216), which provides: "That all goods, wares and merchandise which may be in the public stores or bonded warehouses on the day and year this act shall take effect shall be subjected to no other duty upon the entry thereof for consumption, than if the same were imported respectively after that day." In support of this conclusion counsel attempt to maintain that the salt after its discharge from the Cambridge and prior to July 23, was in a "public store," and not yet entered for consumption. The material fact assumed in this proposition is not true. There are not now nor never were any public stores or bonded warehouses for the storing of imported goods established in Portland. The salt was delivered from the vessel on to the private premises of the defendant. At the time it is apparent that he had no thought of such a thing as the salt being entered in bond or deposited in a public store or warehouse. The duties being more than the defendant was prepared to pay at once, the collector, as a favor, trusted the defendant until he could dispose of some portion of the salt. Upon this arrangement he paid the $300, but hearing soon after of this provision in the act of June 30, 1864, he appears to have conceived the idea of claiming that this importation came within section 19 of said act, because the salt was in fact stored in a warehouse (his own) when the act took effect, and because the formal entry for consumption was not made until after that date. If there had been a bonded warehouse in Portland, as there should have been, it is more than likely that this salt would have been entered in bond, and thus brought within the operation of said section 19, and thereby been admitted to consumption at one third less duties than it was. For this reason, it may be said that the defendant was within the equity of the statute, and if he had promptly paid the duties according to the collector's assessment and his agreement, and then appealed to the secretary of the treasury in the mode prescribed by law, the difference might have been remitted to him. But as it was, the defendant not only refused to perform his agreement with the collector, but seemed disposed to avoid the payment of even the $422.45 which he now admits was due from him in any event.

Second: That the importation was not complete until the formal written entry of the goods for consumption on July 23, and that therefore the duties thereon are to be computed under the act then in force. But the reason of the thing and the whole current of authorities are otherwise. Duties accrue when the vessel containing the goods arrives at the proper port of entry. This is the moment when the importation is complete, and not the subsequent entry at the custom house. This is the long and well established rule even in cases like this, where a new act has been passed increasing or diminishing duties upon goods imported after a specified period. Meredeth v. U. S., cited above; U. S. v. Bowell, 5 Cranch [9 U. S.] 372; Arnold v. U. S., 9 Cranch [13 U. S.] 120; U. S. v. Lindsey [Case No. 15,603]; Prince v. U. S. [Id. 11,425]. Judgment that the plaintiff recover of the defendant, $783.68, with interest thereon at the rate of ten per centum per annum, from July 23, 1864, amounting to $76.19, together with its costs and disbursements of this action, taxed at $70.72.

[Affirmed on error in the circuit court September 13, 1866 (Field, Circuit Justice). Case unreported.]