(C. D. 688)

COLUMBIA CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 30, 1942)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly*, special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Ekwall, Judge: In this suit against the United States the importer seeks to recover a sum of money paid to the collector of customs at the port of San Francisco, Calif., as duties upon certain Chinese wines, which were entered for warehouse and, because they remained in warehouse more than 3 years, were abandoned and destroyed. Plaintiff, the importer, claims that the assessment of duties was illegal and void; that the merchandise was prohibited merchandise and should never have been permitted entry into warehouse but was subject to seizure and destruction immediately; and further, that the merchandise was destroyed under customs supervision and did not enter into the commerce and trade of the United States.

Two protests were consolidated. At the hearing the collector's letters, together with the letters of the Commissioner of Customs to the collector in each case, were offered and received in evidence. With the exception of the protest number and dates of entry, these letters are identical, and are as follows:

[Collector's answer to protest]

The merchandise the subject of this protest was entered for warehousing on Whse entry 3117, 6/23/36.

The merchandise at the time of importation was in bottles not having thereon the indicia prescribed by Regulation #13 of the Internal Revenue Bureau. Regulation #13 prohibits the release of such merchandise for consumption entry until in bottles or containers having thereon the prescribed indicia. Altho the consignee was aware of the cause of detention and that the merchandise would not be released for consumption entry until in bottles or containers having thereon the prescribed indicia, it was not re-bottled. Nor was there an application to re-bottle ever denied. Consequently the merchandise was detained in customs custody and release withheld until the 3-year warehousing period had expired.

The merchandise (Chinese wines) per se is not prohibited merchandise, and therefore not subject to seizure and destruction. As bottled it was subject to detention only until in bottles or containers having thereon the indicia prescribed by Regulation #13 of the Internal Revenue Bureau.

At the expiration of the 3 year warehousing period, no applications having been filed to export or destroy under Section 557 TA 1930, or to abandon under Section 563 (b) TA 1930, and no request made for the suspension of the operation of Section 559 TA 1930 in view of the fact and until the Customs Court had adjudicated the protested claim that the merchandise was not distilled spirits as held by the Internal Revenue Bureau and therefore not subject to Regulation #13, the merchandise was regarded as being abandoned to the government (Section 559 TA 1930, CRs 37 Art 1010), advertised and offered for sale (Art (b) 1010), and, as it could not be sold for a sufficient amount to pay the internal revenue taxes (Art 1012), it was ordered destroyed (Art 1025) and destroyed 8/12/40, more than 60 days prior to the date the protest was filed in this office, 10/16/40.

After the destruction of the merchandise, the Collector 8/19/40 demanded of the consignee the payment of the unpaid duties. If the protest is directed against the Collector's demand for the unpaid duties, it is considered not a protestable act within the purview of Section 514, TA 1930, as the demand was a ministerial act.

The collector incorporates and makes a part of his answer by reference thereto, the attached copy of letter from the Bureau of Customs, 5/7/40, file 362.31.

[Letter of Commissioner of Customs to Collector]

Receipt is acknowledged of your letter dated April 19, 1940, reporting on the request of Harper, Robinson and Company to consider as prohibited merchandise an importation of certain Chinese wine by The Columbia Company and covered by warehouse entry no. 3555 dated September 3, 1936.

The record shows that the importation in question arrived at your port on August 20, 1936, ex SS PRESIDENT LINCOLN; that it was entered for warehouse on September 3, 1936; and that the merchandise has remained in bonded warehouse beyond the expiration of the bonded period. The record further shows that the wine was not packaged in indicia bottles as required by Regulation 13 of the Bureau of Internal Revenue.

Harper, Robinson and Company state that prior to the receipt of a letter from the Acting District Supervisor, Alcohol Tax Unit, San Francisco, California, addressed to you under date of April 29, 1936, which ruled that the so-called Chinese wines if imported on or after June 1, 1936, will not be released for consumption in the United States unless packaged in indicia bottles in accordance with the requirements of Regulations 13, it was not the practice to require similar importations to be in indicia bottles. It is further stated that the importing company had no intention of importing merchandise contrary to Regulations 13; that a warehouse entry was made for the wine in question for the purpose of ascertaining if the indicia requirements had been met; and that upon examination by customs it was found that the bottles were not indicia blown. It is alleged that the merchandise was not rebottled for the reason that the local Chinese did not wish to purchase imported merchandise which has been tampered with or rebottled; that if rebottled, the importing company could not profitably sell the wine; and that the cost of returning the shipment to China is greater than the value of the merchandise. Request is therefore made to treat the instant importation as prohibited merchandise and that it be destroyed, evidently for the purpose of avoiding liability for the duties due thereon.

You state that the importation in question cannot be released from customs custody until rebottled in indicia bottles, stamped and label releases filed and that as the bonded period has expired, the importing company has lost its right to manipulate, export, destroy, or abandon the merchandise without authority from the Bureau.

As the merchandise (wine) is not per se prohibited, the Bureau cannot consider such merchandise as being prohibited in order to relieve the importing company from its liability for the payment of the duties in the event the wine is destroyed or, if sold, the proceeds from the sale thereof are insufficient to pay the duties in full. You will be governed accordingly.

Harper, Robinson and Company are being advised of the action taken by the Bureau in this case.

The following facts were agreed to by oral stipulation:

Regulation 13 of the Internal Revenue Bureau was in effect during the period from June 3, 1936, to September 12, 1940.

The merchandise here involved was in customs custody at all times subsequent to the date of entry; and was destroyed on August 12, 1940, under customs supervision.

The duties were paid on October 16, 1940, and protests were filed within 60 days thereafter.

The provisions of the Tariff Act of 1930 and the regulations rhereunder applicable are as follows:

## SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

## SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS.

*     *     *     *     *     *     *

(b) ABANDONMENT.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years (or ten months in the case of grain) from the date of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

## SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years (or ten months in the case of grain) from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of

duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country, or for shipment or for transportation and shipment to the Virgin Islands, American Samoa, or the island of Guam, without the payment of duties thereon, or for transportation and rewarehousing at another port: *Provided*, That the total period of time for which such merchandise may remain in bonded warehouse shall not exceed three years (or ten months in the case of grain) from the date of importation. Merchandise upon which the duties have been paid and which shall have remained continuously in bonded warehouse or otherwise in the custody and under the control of customs officers, may be entered or withdrawn at any time within three years (or ten months in the case of grain) after the date of importation for exportation or for transportation and exportation to a foreign country, or for shipment or for transportation and shipment to the Virgin Islands, American Samoa, or the island of Guam, under such regulations as the Secretary of the Treasury shall prescribe, and upon such entry or withdrawal, and exportation or shipment, 99 per centum of the duties thereon shall be refunded. Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

SEC. 559. WAREHOUSE GOODS DEEMED ABANDONED AFTER THREE YEARS.

Merchandise upon which any duties or charges are unpaid, remaining in bonded warehouse beyond three years (or ten months in the case of grain) from the date of importation, shall be regarded as abandoned to the Government and shall be sold under such regulations as the Secretary of the Treasury shall prescribe, and the proceeds of sale paid into the Treasury, as in the case of unclaimed merchandise covered by section 493 of this Act, subject to the payment to the owner or consignee of such amount, if any, as shall remain after deduction of duties, charges, and expenses. Merchandise upon which all duties and charges have been paid, remaining in bonded warehouse beyond three years (or ten months in the case of grain) from the date of importation, shall be held to be no longer in the custody or control of the officers of the customs.

Customs Regulations of 1937.

Art. 1025. Merchandise remaining unsold—Of no commercial value.—Merchandise remaining unsold shall be included in the next regular sale of unclaimed and abandoned merchandise, unless the collector is of the opinion that such merchandise is unsalable, or of no commercial value, in which case it should be destroyed.

It is contended in the brief filed on behalf of the plaintiff that the merchandise was not imported and therefore no duty should be assessed thereon. In support of this contention plaintiff cites the cases of *Fabbri* v. *Murphy*, 95 U. S. 191, 24 L. ed. 468; *American Cigar Co.* v. *United States*, 146 Fed. 484; and *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980.

The cited cases involved the question as to whether tariff statutes enacted subsequent to entry of merchandise are intended to operate

retrospectively. The holding in each of those cases was that for the purposes of such retrospective statutes an importation is not deemed to be complete while the merchandise is in customs custody and control. No such situation is presented here. We think the line of cases applicable here are those that hold that merchandise has been imported when it enters the customs district with the intent to unlade. See *United States* v. *Ten Thousand Cigars*, 28 Fed. Cas. 38; *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; *Kee. Co.* v. *United States*, 13 Ct. Cust. Appls. 105, T. D. 40943; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052; *Headley Asphalt Division, etc.* v. *United States*, 24 C. C. P. A. (Customs) 427, T. D. 48873.

In this connection the language of the court in the case of *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293, is pertinent. There it was said:

Appellant has pressed the proposition that the Government in the instant case is charging it duty on goods which are not actually imported (since they did not enter the commerce of the country) and that on the theory that there should be a remedy for every wrong it should have the right to protest after withdrawal of the goods and payment of the duties since its first opportunity of discovering the alleged nonimportation was at that time.

As has been pointed out in numerous decisions of this and other courts, the Government in giving its consent to be sued prescribes the terms and conditions upon which the suit shall be brought. The statute relating to protests fixes a definite time limit within which the action may be brought. It has made no provision that fits the alleged wrong which appellant claims to have suffered.

\* \* \* \* \* \* \*

A holding here that the protest is untimely seems to us to be equivalent to holding that there is no remedy afforded by the statute for the alleged hardship concerning which the importer has made complaint.

It is our conclusion that under the circumstances of this case, appellant was authorized only to protest within sixty days from the time of the collector's liquidation, and that its protest filed at the time of withdrawal of the goods and payment of duties was untimely.

Therefore, if the protests before us are intended to be against the amount of duties assessed on liquidation they are properly dismissable as untimely.

Moreover, the importers, when they found that the wines could not be released unless packed in bottles which conformed to the requirements of the internal revenue regulations, had a choice of either rebottling the same in indicia bottles or abandoning the merchandise. They took no action insofar as the rebottling was concerned, for the reason, it is alleged, that the "local Chinese did not wish to purchase imported merchandise which has been tampered with or rebottled; that if rebottled, the importing company could not profitably sell the wine; and that the cost of returning the shipment to China is greater than the value of the merchandise." Under such circumstances the

merchandise might have been destroyed within the 3-year warehouse period under section 557, *supra*, in which event the importer would not have been liable for the duty.

The court finds no warrant for plaintiff's contention that the merchandise was prohibited merchandise and could not become a part of the commerce of this country because Regulation 13 provided that it must be in bottles that had blown in them the information required by said regulation. There is nothing to indicate that the wines *per se* were prohibited and subject to seizure and destruction. So far as the record shows they were merely subject to detention until such time as they should have been packed in containers which complied with the internal revenue regulations.

Upon the record we find that the plaintiff's claims should be and the same are hereby dismissed.

Judgment will be rendered accordingly.